IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| KANSAS CITY SOUTHERN RAILWAY COMPANY and NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>BRADY LEE BORROWMAN, et al.,<br><br>Defendants. | No. 09-3094 |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendants' Motion to Dismiss (d/e 6) and Plaintiffs' Request for Oral Argument on Defendants' Motion to Dismiss (d/e 15). For the reasons stated below, both Motions are denied.

FACTS

According to the Amended Complaint (d/e 18), Plaintiffs Kansas City Southern Railway Company (Kansas City Southern) and Norfolk Southern Railway Corporation (Norfolk Southern) operate interstate railroads that cross through Illinois. Defendants Brady Lee Borrowman, Russell E.

1

Koeller, and Dan Lundberg serve as commissioners of Defendant Sny Island Levee Drainage District (Sny Island), which is a subdivision of the State of Illinois organized to construct and operate a system to provide surface water control to certain areas of land.  Defendant Michael H. Reed serves as Sny Island's superintendent and treasurer.

Illinois granted Sny Island the power to tax land owners within its boundaries to fund operations, and a recent tax increase forms the basis of this suit.  For all tax years preceding 2009, Sny Island taxed Kansas City Southern and Norfolk Southern on a per acre basis in line with all other landowners for their proportionate shares of the operation costs for the surface water control system.  For tax year 2009, however, Sny Island changed its assessment method.

For 2009, Sny Island assessed taxes against all landowners other than currently operating railroads and utilities on the customary per acre basis, with a $10.00 per acre increase over the prior year's assessment.  Sny Island also hired a firm of consulting engineers, however, to estimate the amount of benefit Kansas City Southern, Norfolk Southern, and any other currently operating railroad or utility company received from Sny Island's surface water control system.  Based on this assessment, Sny Island imposed a

substantially higher tax increase on Kansas City Southern and Norfolk Southern. Had these companies received tax assessments under the same method as non-railroads and non-utilities, Kansas City Southern would have been obligated to pay $3,897.14 in taxes. Instead, Sny Island imposed a tax of $85,544.26. Similarly, Norfolk Southern would have been obligated to pay $2,578.26 in taxes. Instead, Sny Island imposed a tax of $93,917.34. These figures represent thousand-fold increases over the prior year: Kansas City Southern's tax rate increased 4,700 percent, and Norfolk Southern's tax rate increased 8,000 percent.

Before Sny Island could impose the new tax rates, under the statute it had to petition the Circuit Court for Pike County, Illinois, for approval. On August 22, 2008, Sny Island filed the required petition and asked the court to confirm an assessment roll for 2009. The court scheduled hearings on the proposed new assessments for September 25, 2008. and October 9, 2008. Sny Island published hearing notices in three local newspapers and mailed hearing notices to every property owner listed in the assessment roll, including Kansas City Southern and Norfolk Southern.

In late August or early September of 2008, Sny Island mailed a letter to landowners in the district explaining that it was increasing the tax

assessment for 2009. The letter included a notice setting forth the total amount of the new assessment to be imposed on all landowners collectively; it did not state how the total assessment would be allocated to any landowner specifically. Instead, it stated that the increased assessments "'would generally result in a maximum $10.00 per acre increase in annual drainage assessments to benefited [sic] agricultural land in the District.'" Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Under Rule 12(B)(1) (d/e 13), Exhibit 1, Affidavit of Michael Kearney (Kearney Affidavit), ¶ 10 (quoting letter). The letter did not state that Sny Island had used different methods to calculate the amount of taxes owed by different landowners.

After receiving their letters and hearings notices, several property owners filed objections to the assessment increase. The objectors and Sny Island then engaged in discovery. Neither Kansas City Southern nor Norfolk Southern filed objections. Kansas City Southern avers that it received the letter, but because it believed its assessment would increase only $10.00 per acre (from $8.36 to $18.36), it took no action. Norfolk Southern avers that it did not receive the letter discussing the planned increase and was not aware of it.

4

The Pike County court held the scheduled hearings September 25, 2008, and October 9, 2008. At these hearings, Sny Island presented evidence and testimony in support of its proposed assessment increase and explained the manner in which the increase was apportioned. The objectors had the opportunity to cross-examine witnesses and present their own testimony and evidence. Kansas City Southern and Norfolk Southern did not attend or participate in these hearings. Nothing in the pleadings before the Pike County court or the transcripts of proceedings indicates that the court either heard argument regarding or considered the question of whether the method used to allocate the tax increase violated the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11501, which prohibits discriminatory taxing of interstate railroads.

On October 9, 2008, the Pike County court entered its judgment. It found that Sny Island complied with all notice requirements and that the proceedings took place according to law. The court found it necessary and advisable to increase the annual assessment, starting with tax year 2009. The court then ordered the clerk of court to certify the assessment roll and deliver it to all covered county clerks and those acting as county collectors. No one appealed the court's ruling. Kansas City Southern and Norfolk

5

Southern aver that they did not become aware of the court's judgment until January of 2009, when they received their 2009 tax bills from Sny Island.

On April 9, 2009, Kansas City Southern and Norfolk Southern filed suit in this Court. They allege that Defendants violated the Railroad Revitalization and Regulatory Reform Act, which prohibits state and local governments from discriminating against railroads in assessing property taxes. 49 U.S.C. § 11501. They ask the Court to enjoin the collection of the approved assessment. Defendants have filed a Motion to Dismiss.

## ANALYSIS

Defendants have moved to dismiss this case under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. Generally, the Court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the party that filed the complaint. Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995). In deciding a 12(b)(1) issue, however, the Court also may consider evidence outside the complaint. Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993). Here, the Court has relied on affidavits and evidence submitted by both parties in discussing the factual background of this case. Additionally, where defendants question the jurisdictional allegations, plaintiffs must prove that

the jurisdictional requirements have been met. Kontos v. U.S. Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987). Thus, Kansas City Southern and Norfolk Southern bear the burden of establishing jurisdiction here.

According to Defendants, the Rooker-Feldman doctrine bars this claim. The doctrine arises from two Supreme Court cases. In Rooker, the Supreme Court held that among federal courts, only it can reverse or modify an erroneous state court decision. Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). In Feldman, the Supreme Court held that federal district courts lack authority to review final judgments issued by state courts in judicial proceedings. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983). "Taken together, *Rooker* and *Feldman* stand for the proposition that lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." Ritter v. Ross, 992 F.2d 750, 753 (7th Cir. 1993).

Here, Defendants argue that Plaintiffs' suit asks this Court to engage in appellate review of the Pike County court decision approving of the assessment and assessment roll. While the Pike County court did not consider whether Sny Island's proposed assessment discriminated against railroads in violation of the Railroad Revitalization and Regulatory Reform

7

Act, Rooker-Feldman applies so long as a claim is "inextricably intertwined" with a state court's judgment. Ritter, 992 F.2d at 753. If a plaintiff complains of an injury "caused by the state-court judgment," Rooker-Feldman bars its claim. Holt v. Lake County Bd. of Comm'rs, 408 F.3d 335, 336 (7th Cir. 2005). In other words, if Plaintiffs would not have suffered the injury at issue "but for" a state court's judicial judgment, this Court lacks jurisdiction. Id.

Kansas City Southern's and Norfolk Southern's case here is similar to the one the Seventh Circuit confronted in Holt. In that case, the plaintiff lost possession of his property after the county sold it to recover unpaid taxes. Id. at 335. He challenged the validity of the tax sale during eviction proceedings in state court but lost. Id. He then filed a federal suit claiming deprivation of property without due process, but the Seventh Circuit affirmed the district court's dismissal for lack of jurisdiction. Id. The court held that the plaintiff's injury was "caused by the state court judgments upholding the tax sale and evicting him from his property." Id. at 336. Thus, Rooker-Feldman applied. Id.

Here, Plaintiffs complain that the taxes Sny Island assessed are disproportionate, and thus discriminatory. But for the Pike County court's

8

approval of the assessment, however, Plaintiffs would not have to pay those taxes. Thus, their injury was caused by the state court's judgment. The fact that they are raising a claim that the state court did not address does not take this case out of the realm of Rooker-Feldman.

Neither does the Railroad Revitalization and Regulatory Reform Act's grant of jurisdiction to federal courts. Under 49 U.S.C. § 11501(c), district courts have jurisdiction over claims brought "to prevent a violation" of this statute. Plaintiffs assert that this provision provides the Court jurisdiction to hear their claims. Yet, the statute here explicitly grants federal courts jurisdiction "concurrent with other jurisdiction of courts of the United States and the States." Id. This is not a grant of exclusive jurisdiction. It does not grant this Court authority to review a judicial decision issued by a state court that also possessed jurisdiction.

The fact that the Pike County court's decision was not a judicial decision, however, changes matters. Though issued by a judicial body, the Pike County court's judgment was essentially a legislative act. In Feldman, the Supreme Court held that lower federal courts may not review final determinations by state courts in judicial proceedings, but it cautioned that not all court proceedings are judicial. Feldman, 460 U.S. at 476. The

9

nature of a proceeding depends, the Supreme Court noted, "not upon the character of the body but upon the character of the proceedings." Id. at 477 (internal quotation marks omitted).  A court proceeding is only judicial if it "'investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist.'" Id. (quoting Prentis v. Atlantic Coast Line, 211 U.S. 210, 226 (1908)).  In contrast, a court proceeding is legislative if it "'looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.'" Id. (quoting Prentis, 211 U.S. at 226). Federal district courts may review the validity of a rule promulgated in a legislative proceeding.  Id. at 486.

In deciding whether the Pike County court proceeding here was judicial or legislative, the Court must make an analysis of the statute that granted the Pike County court authority to approve Sny Island's tax assessments. The Illinois Drainage Code governs the operation of drainage districts in Illinois, including Sny Island.  70 ILCS 605/1-1 *et seq*.  It provides that "[t]he circuit courts of the several counties have jurisdiction over all matters and proceedings pertaining to the organization and operation of drainage districts."  70 ILCS 605/1-4.  In the event that the

district commissioners "determine that it is necessary or advisable" to "increase an existing annual maintenance assessment," they must petition the circuit court "for authority . . . to levy such an assessment." 70 ILCS 605/4-19.

The court then must hold a hearing. "If, at the conclusion of the hearing, the court finds that it is not necessary or advisable . . . to levy any proposed assessment . . ., then the court shall dismiss the petition." 70 ILCS 605/4-24. The statutes also provides:

> In determining whether the proposed action is necessary or advisable and in determining the cost thereof, the court shall consider environmental values and amenities and may receive testimony from persons especially qualified by reason of training or experience in biological sciences, community planning, natural resource development, conservation, landscape architecture and similar fields. If the court finds that it is necessary or advisable to do one or more of the things proposed and that the benefit resulting therefrom to the lands in the district exceed the cost to such lands, then the court shall also find (a) the things which should be done, (b) the method by which the things shall be done, (c) the probable cost thereof, (d) whether an assessment should be levied or increased, (e) the amount of any assessment or additional assessment or new or increased annual maintenance assessment to be levied, and (f) any other matters which the court deems pertinent, and shall order the things to be done and the levy of an assessment in accordance with its findings.

Id.

In the Court's view, the proceeding at issue here was not judicial. The Illinois Drainage Code empowers county courts to determine whether proposed assessment increases are "necessary or advisable." Id. This determination is to be made after consideration of scientific, economic, and planning factors. The Pike County court was authorized to do more than decide whether the commissioners' proposed assessment was legal, under existing laws. The statute authorized the court to determine, based on a cost-benefit analysis, whether such an assessment was *advisable* -- whether it would benefit landowners in the future. Moreover, upon such a finding, the statute gave the court the power to set the amount of the assessment increase. These are legislative powers, and the Pike County court exercised them in issuing its judgment.

Indeed, the facts here are similar to those in Prentis. In that case, the plaintiffs sued to enjoin a Virginia commission from enforcing an order fixing the rates railroads could charge passengers. Prentis, 211 U.S. at 216. The Supreme Court held that for some functions, the commission had judicial powers, but its decision to fix railroad rates was legislative. Id. at 226. Under statute, the commission was authorized to fix rates, but it first had to publish the proposed rates and hold hearings regarding any

objections. Id. at 224. Any party unhappy with the commission's decision after such a hearing could appeal it to a state court of appeals, which was authorized to substitute the order it believed the commission should have entered. Id. According to the Supreme Court, these proceedings plainly were legislative: "The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind . . . ." Id. at 226. The Court sees little to distinguish the Prentis proceedings from that at issue here.

Defendants assert that the Sny Island assessment approval process differs because "the assessment is a mechanical function of three things: total maintenance expenditures; total benefit to all the properties in the district; and allocation of that benefit to each tract." Defendants' Reply Memorandum in Support of Motion to Dismiss Under Federal Rule 12(B)(1) (d/e 14), at 6. According to Defendants, the only challenge here is to the last factor -- the allocation of the benefit to each tract -- which they argue is a decision based on past or present facts. Past or present facts underlie legislative decisions as well as judicial ones, however. The key is whether the Pike County court's decision was based on existing law, and Defendants have identified no legal authority on which the Pike County

13

court had to rely in determining the appropriate allocation amounts or method of allocating the assessment. The Pike County court's approval and allocation of the assessment was not mechanical; instead, the court essentially made a policy decision to assess railroad and utility acreage more per acre than agricultural property. In doing so, it essentially made a new rule for the future. That is the essence of legislative action.

Further, the Pike County court's decision was not like the decisions in Feldman, which the Supreme Court ruled judicial. In that case, plaintiffs challenged the District of Columbia Court of Appeals' refusal to admit them to the bar because they had not graduated from ABA-accredited law schools. Feldman, 460 U.S. at 463. The plaintiffs attempted to persuade the District of Columbia Court of Appeals that it should waive the requirement of graduation from accredited law schools in their cases -- one because his admission to other state bars demonstrated his competence as an attorney and the other because, in deciding to attend his unaccredited law school, he relied detrimentally on prior waivers the court had issued to other applicants. Id. at 466, 471. The District of Columbia Court of Appeals refused their applications after it "determined as a legal matter" that they were not entitled to admission. Id. at 480-81. This was a judicial inquiry,

14

the Supreme Court held:

> The proceedings were not legislative, ministerial, or administrative. The District of Columbia Court of Appeals did not look to the future and change existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. Nor did it engage in rulemaking or specify the requirements of eligibility or the course of study for applicants for admission to the bar . . . . Nor did the District of Columbia Court of Appeals simply engage in ministerial action. Instead, the proceedings before the District of Columbia Court of Appeals involved a judicial inquiry in which the court was called upon to investigate, declare, and enforce liabilities as they [stood] on present or past facts and under laws supposed already to exist.

Id. at 479 (internal quotation marks and citations omitted).

Importantly, the District of Columbia Court of Appeals in Feldman decided whether the law allowed the plaintiffs to be admitted as attorneys; the Pike County court in this case made no similar decision. If the Pike County court's approval of the assessment increase here had involved only the question of whether Sny Island's proposed increase was lawful, its decision might be considered judicial, but that was not the issue before the Pike County court. Instead, under the Illinois Drainage Code, the court decided whether an increase was necessary and advisable and then set the increase without reference to other legal authority. This was a legislative decision.

The fact that the Illinois Supreme Court has deemed court approval of drainage commission actions judicial does not change this Court's analysis. As Defendants point out, the Illinois Supreme Court has ruled that a proceeding similar to the one in the Pike County court was judicial. See Rowand v. Little Vermilion Special Drainage Dist., 98 N.E. 969, 971 (Ill. 1912) (holding that a court's decision to approve a drainage commission classification scheme was appealable because it involved property rights, which "are properly cognizable by the judiciary"); see also People ex rel. Devine v. Murphy, 693 N.E.2d 349, 353 (Ill. 1998) (holding that judicial review of the assessment of property taxes does not violate the separation of powers provision of the Illinois constitution). According to the United States Supreme Court, however, whether a state considers its proceedings judicial or legislative is not determinative of federal jurisdiction:

> [A]lthough the Constitution did not limit the power of the states to create courts and to confer upon them such authority as might be deemed best for state purposes, that right could not, by its exertion, restrain or limit the power of the courts of the United States by bringing within the state judicial authority subjects which in their constitutional sense were nonjudicial in character, and therefore not within the implied or expressed limitation by which courts of the United States were restrained from staying judicial proceedings in state courts. To hold to the contrary would be in large measure to recognize that the exertion of the authority of the courts of the United States was

16

> dependent, not upon the nature and character of the subject-matter with which they are called upon to deal, but merely upon a state classification.

Public Service Co. of N. Ill. v. Corboy, 250 U.S. 153, 162 (1919); see also Feldman, 460 U.S. at 478 ("In determining the nature of the proceedings, we must for ourselves appraise the circumstances of the refusal.") (internal quotation marks omitted). In this Court's view, the Pike County court's decision was legislative; Illinois' classification of the decisionmaking process does not affect this Court's analysis.

The Rooker-Feldman doctrine does not limit this Court's jurisdiction over Plaintiffs' claims. Under 28 U.S.C. § 1331, this Court has federal question jurisdiction to hear suits alleging a violation of federal statute. Plaintiffs have brought such a suit.

Before concluding, the Court notes that Plaintiffs requested oral argument on the Motion to Dismiss, and Defendants opposed their request on the ground that it would delay the Court's ruling. After reviewing the pleadings, the Court sees no need for oral argument. Thus, Plaintiffs' request for a hearing on the Motion to Dismiss is denied.

THEREFORE, Defendants' Motion to Dismiss (d/e 6) and Plaintiffs' Request for Oral Argument on Defendants' Motion to Dismiss (d/e 15) are

DENIED. This case is set for a hearing regarding Plaintiffs' Motion for Preliminary Injunction (d/e 8) on May 29, 2009, at 9:00 a.m.

IT IS THEREFORE SO ORDERED.

ENTER: May 22, 2009

    FOR THE COURT:

                                      s/ Jeanne E. Scott
                                      JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE