IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| KANSAS CITY SOUTHERN RAILWAY COMPANY and NORFOLK SOUTHERN RAILWAY COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> BRADY LEE BORROWMAN, et al., <br><br> Defendants. | No. 09-3094 |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Plaintiffs' Emergency Motion for Leave to Pay into the Registry of the Court (d/e 34), Plaintiffs' Motion to Reconsider (d/e 28), Plaintiffs' Motion for Protective Order (d/e 30), Defendants' Opposition to Plaintiffs' Motion for Protective Order and Motion to Compel Discovery (d/e 33), and Plaintiffs' Motion for Leave to File Reply (d/e 38). For the reasons stated below, Plaintiffs' Motion for Leave to Pay into the Registry of the Court is GRANTED; Plaintiffs' Motion to Reconsider is GRANTED in part; Plaintiffs' Motion for

1

Protective Order and Defendants' Motion to Compel Discovery are referred to Magistrate Judge Charles H. Evans; and Plaintiffs' Motion to File Reply is DENIED as moot.

FACTS

Plaintiffs Kansas City Southern Railway Company (Kansas City Southern) and Norfolk Southern Railway Company (Norfolk Southern) (collectively Railroads) operate interstate railroads that run through Illinois. Defendants Brady Lee Borrowman, Russell E. Koeller, and Dan Lundberg are the commissioners of Defendant Sny Island Levee Drainage District (Sny Island). Sny Island is a subdivision of the State of Illinois that constructs and operates a system that provides surface water control to certain areas of land. Defendant Michael H. Reed is Sny Island's superintendent and treasurer. The State of Illinois has granted Sny Island the authority to levy assessments against land owners within its boundaries to fund operations. Plaintiffs have brought this suit to enjoin the collection of an annual assessment increase for the year 2009.

Prior to 2009, Sny Island assessed landowners within its boundaries by one method: it divided its operating budget by the number of benefitted acres, and then assessed a per-acre fee to each landowner based on the

number of acres owned, with an adjustment of the dollars-per-acre fee per tract for elevation.  Sny Island did not distinguish among residential, industrial, commercial, and agricultural lands, beyond assessing lands within a municipality a flat $5 fee per lot without adjustment for elevation.  Prior to 2009, Sny Island assessed Kansas City Southern and Norfolk Southern in this matter.

However, in 2009 Sny Island altered its assessment method.  It decided not to assess any amount to the lands within a municipality because the costs of mailing the assessment materials to these landowners and then collecting from them outweighed the benefits of doing so.  Sny Island divided lands falling outside of a municipality into two categories.  Residential, commercial, and agricultural lands comprised one category, while industrial lands fell into the other.  Industrial lands included property owned by railroads, pipelines, and utilities.

Of the nearly 700 landowners within Sny Island's boundaries, approximately 692 fell into the first category. Most of the properties in that category were agricultural, while 14 were commercial and a few are residential.  Only 8 landowners fell into the industrial category, including Kansas City Southern and Norfolk Southern.

3

Sny Island then developed two assessment methods, one for each category. For the first category consisting of residential, commercial, and agricultural landowners, Sny Island simply added $10 to the 2008 assessment amount to determine the amount due for 2009. The method Sny Island used to compute this increase is a mystery; while its corporate designee testified that Sny Island assumed an average benefit-per-acre of $280, he provided the Court with no evidence as to how this figure was reached, nor did he explain how it related to the $10-per-acre increase. In any event, Sny Island's attorneys apparently recommended the $280 figure to the commissioners based on information relating to the cash rent and market value of benefitted lands.

Sny Island's method for assessing industrial lands was quite different. Sny Island's attorneys assumed a hypothetical flood without the benefit of drainage levees, and then determined on an individual basis how much the industrial property owners would have to pay to repair damage, and how much financial loss they would suffer if their lands became unusable due to the flood. Sny Island then calculated a per-acre benefit amount for each

industrial landowner, and multiplied that amount by 6.6%.[1] Sny Island did not analyze on an individual basis the economic benefits provided to the commercial, residential, and agricultural landowners that fell into the first category.

Based on the industrial methodology discussed above, Sny Island imposed an assessment of $85,544.26 on Kansas City Southern, and a $93,917.34 assessment on Norfolk Southern. Under the methodology used for the first category of landowners, the assessments would have been $3,897.14 and $2,578.26, respectively. To put it another way, Kansas City Southern's assessment rate increased 4700%, and Norfolk Southern's rate increased 8000%.

On October 9, 2008, the Pike County, Illinois Circuit Court ordered the annual assessment as Sny Island had proposed. The Railroads filed this suit to enjoin collection of the assessments, arguing that they were discriminatory and thus violated the Railroad Revitalization and Regulatory Reform Act (4-R Act), 49 U.S.C. § 11501(b). The first installment of assessments was due on June 1, 2009, and the second installment was due

---

[1] As this Court noted in its earlier Opinion dated August 18, 2009 (d/e 27), it is unclear *why* Sny Island settled on this percentage.

September 1, 2009. While the Defendants have given the Railroads extensions to accommodate this lawsuit, those extensions have now expired.

On August 18, 2009, the Court in a written Opinion (d/e 27) denied Plaintiffs' Motion for Preliminary Injunction (d/e 8). The Plaintiffs filed a Motion to Reconsider on August 24, 2009, asking the Court to clarify a portion of its Opinion (d/e 27).

Then, on September 18, 2009, the Plaintiffs filed an Emergency Motion with the Court, requesting that they be allowed to pay into the Court's registry the assessments in dispute in this action. The Railroads filed this Motion after Sny Island sent them delinquency notices on September 8, 2009, threatening a tax sale of the property by the Pike County Collector if the assessments were not paid in the very near future. <u>Plaintiffs' Emergency Motion</u>, Exs. A & B.

## ANALYSIS

The parties have presented several issues to the Court, and the Court will address each in turn.

I.  <u>MOTION TO RECONSIDER</u>

The Plaintiffs have petitioned the Court to reconsider its August 18, 2009, Order (d/e 27) denying Plaintiff's Motion for Preliminary Injunction

(d/e 8). In particular, the Plaintiffs seek clarification of a sentence on page 17 of the Order that reads: "Indeed, it appears that § 11501(c) applies only to discriminatory property taxes, and therefore it does not assist Plaintiffs here." Plaintiffs are concerned that this sentence may be interpreted to mean that they, "regardless of the evidence offered by them at the trial of this case on the merits, cannot be granted injunctive relief, not even a permanent injunction, because the tax in this case is not a property tax." Plaintiffs' Memorandum of Law in Support of Motion to Reconsider (d/e 29) at 1.

    The Seventh Circuit has indicated that injunctive relief is available in discriminatory non-property tax case brought under § 11501(b)(4) of the 4-R Act. Burlington Northern R. Co. v. City of Superior, 932 F.2d 1185, 1188 (7th Cir. 1991); see also Kansas City Southern Ry. Co. v. McNamara, 817 F.2d 368 (5th Cir. 1987); Trailer Train Co. v. State Bd. of Equalization, 697 F.2d 860, 869 n.16 (9th Cir. 1983) (holding that § 11501(c) "specifically authorizes a district court to grant injunctive relief to prevent a violation" of § 11501). Accordingly, the Court reconsiders and deletes the first full sentence appearing on page 17 of the Court's Opinion (d/e 27) of August 18, 2009, reading: "Indeed, it appears that § 11501(c) applies only

to discriminatory property taxes, and therefore it does not assist Plaintiffs here." In the event that Plaintiffs are able to demonstrate that the assessment imposed by the District is discriminatory and violates § 11501(b)(4), this Court may grant prospective injunctive relief under § 11501(c).

The Plaintiffs' Motion to Reconsider is therefore granted only to the limited extent of vacating the sentence cited above.

II.     MOTION TO PAY INTO REGISTRY OF THE COURT

Plaintiffs' Emergency Motion to Deposit Funds into the Registry of the Court (d/e 34) requests that the Court allow the Railroads to deposit the sums of $85,544.26 and $93,917.34, representing the disputed assessments, in an FDIC-insured money market account at a financial institution of the Court's choosing pending a final resolution of this matter on the merits. The Defendants oppose this Motion, pointing out that the assessments have technically been due since January 1, 2009, and that the Defendants have extended that deadline several times as a courtesy. Defendants also argue that the Plaintiffs' request is an attempted end-run around the Court's denial of their Motion for Preliminary Injunction. Finally, Sny Island maintains that delay in payment will greatly harm Sny Island, whereas the

harm to the Railroads will be relatively slight.

Federal Rule of Civil Procedure 67 permits a party to deposit with the clerk of court a sum of money that is in dispute. Although Rule 67 is most commonly used when the depositor of the disputed funds is disinterested, the Advisory Committee Notes to the 1983 Amendment make clear that the procedure can also apply in "situations in which a litigant may wish to be relieved of responsibility for a sum or thing, but continue to claim an interest in all or part of it."

Whether to grant leave for such a deposit is solely within the Court's discretion. Garrick v. Weaver, 888 F.2d 687, 694 (10th Cir. 1989); Design Benefit Plans, Inc. v. Enright, 940 F.Supp. 200, 207 (N.D. Ill. 1996). In deciding whether to exercise their discretion, federal courts have looked to whether the amount sought to be deposited was definite; whether the funds could be deposited all at once or whether there would be repeated deposits that would impose an undue burden on the clerk of court; and whether the party seeking leave to deposit the funds had demonstrated a likelihood of success on the merits. Enright, 940 F.Supp. at 207; Saw Mill Broadcasters, Inc. v. Moore, 561 F. Supp. 1139 (S.D.N.Y. 1983).

The court in Design Benefits Plans v. Enright denied the plaintiff's

Rule 67 motion. <u>Enright</u>, 940 F. Supp. at 207. The plaintiff, an insurance broker, alleged that its sales agents, the defendants, breached an agency agreement between the parties. <u>Id.</u> at 202. The defendants counterclaimed for commissions due under the agreement, which the plaintiff had refused to pay. <u>Id.</u> The plaintiff sought leave to deposit with the court the disputed commissions. <u>Id.</u> at 206-07. The court denied the motion, finding that the amount in question was unclear and could exceed four million dollars, thus imposing a great burden on the clerk of court. <u>Id.</u> at 207. Further, the court pointed out that the reason the plaintiff was seeking to deposit the funds was unclear, as such a deposit would not excuse the plaintiff from the lawsuit, and denying the motion would not prejudice the plaintiff. <u>Id.</u>

However, in <u>General America Transportation v. Limbach</u>, the court allowed the railroad plaintiff to deposit the amount of a disputed tax assessment into the court's registry pursuant to Rule 67, pending resolution of the case on the merits. <u>Limbach</u>, 1987 WL 288146, at *16 (S.D. Ohio Dec. 28, 1987); <u>see</u> <u>Atchison, Topeka & Santa Fe Ry. Co. v. Lennen</u>, 531 F.Supp. 220, 236-38 (D. Kan. 1981) (granting preliminary injunction on railroad plaintiff's claim under the 4-R Act and ordering plaintiff to deposit disputed monies with the court); <u>see also</u> <u>Gulf States Utilities Co. v. Ala.</u>

Power Co., 824 F.2d 1465 (5th Cir. 1987) (upholding district court's decision allowing plaintiff in contract action to pay disputed installments into the court's registry). The court also held that it could only provide prospective relief, and thus could not order the defendants to reimburse the plaintiffs for discriminatory assessments that had already been paid. Limbach, 1987 WL 288146, at *15-16.

Section 11501 grants federal district courts jurisdiction over 4-R Act cases to "prevent" violations of the Act. Literally read, the statute grants power over imminent or prospective conduct, but does not provide for retrospective relief.[2] 49 U.S.C. § 11501(c); Bair, 584 F.Supp. at 1231; Lennen, 531 F.Supp. at 236-38. Thus, once a plaintiff pays a discriminatory assessment, the 4-R Act does not give the federal courts jurisdiction to order the defendant to refund the assessment, for to do so

---

[2] It is true that "[w]hen Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in the light of statutory purposes." Mitchell v. DeMario Jewelry, Inc., 361 U.S. at 288, 291-92 (1960). However, traditional principles of comity and restraint require the Court to construe § 11501 narrowly. See Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 107-09 (1981) (indicating that district courts should exercise equitable restraint when dealing with state tax matters). Section 11501(c) gives this Court the power to *prevent* a violation of § 11501(b), and "will not be interpreted as an indication that federal district courts may open state coffers to plaintiff railroads seeking refunds of past tax payments." Burlington Northern R. Co. v. Bair, 584 F.Supp. 1229, 1232 (S.D. Iowa 1984).

would "interfere impermissibly with integral state functions." Lennen, 531 F. Supp. at 240. Indeed, some courts have suggested that ordering such relief would not only be against the clear statutory language, but unconstitutional to boot. See id. at 241 (holding that a refund remedy under the 4-R Act would be "unnecessary, inappropriate, inequitable, and unconstitutional" under the Tenth Amendment); Bair, 584 F.Supp. at 1232 (determining that forcing a state to refund a tax payment under the 4-R Act would violate the Eleventh Amendment).

    Here, the Court wishes to preserve an avenue of relief if the Railroads are able to prevail on the merits. If the Plaintiffs pay Sny Island the assessments that are due and the Court later finds that the assessments are discriminatory under § 11501(b)(4), precedent makes clear that the Court will have no power to order retrospective relief, leaving Plaintiffs without a remedy for the 2009 assessment.

    Unlike the disputed commissions in Enright, the assessments are a fixed amount, obviating the need for the Court to engage in guesswork as to how much money should be deposited. Additionally, because the Railroads are capable of making the deposits in one fell swoop, the Clerk of Court will not be burdened by repeated deposits. Also, and unlike in

Enright, the Plaintiffs here will suffer prejudice if the assessments are paid because, as discussed above, they will have no recourse even if the Court determines that the assessments violate the 4-R Act.

Sny Island argues that a Rule 67 deposit is essentially an injunction that deprives it "of the benefits of the maintenance funds as well as the right to seek recourse for non-payment." Defendants' Opposition to Plaintiffs' Motion for Leave to Pay into the Registry of the Court (d/e 36) at 7. Sny Island cites Illinois Bell Telephone v. WorldCom Technologies to support this proposition. Illinois Bell, 157 F.3d 500 (7th Cir. 1998). In Illinois Bell, the plaintiff filed suit to contest a decision by the Illinois Commerce Commission ordering the plaintiff to share past revenues with other telecommunications carriers for use of their facilities. Id. at 501. The district court stayed enforcement of the Commission's order. Id. at 502. After rejecting the plaintiff's claims on the merits and the expiration of the first stay, the district court issues a second stay. Id. Upon the impending expiration of the second stay, the plaintiff appealed to the Seventh Circuit to issue another stay of the Commission's order, pending appeal of the district court's decision, and relying on subsection (d) of Rule 62, called "Stay with Bond on Appeal." Id. It argued that because the Commission's

order was akin to a money judgment, the plaintiff should be allowed to post a supersedeas bond with the court representing monies allegedly owed the other carriers. Id.

The Seventh Circuit rejected the plaintiff's request, finding that the plaintiff was not seeking to stay a court order, but the Commission's order. Id. Thus, the plaintiff's willingness to post a bond was insufficient to justify interfering with the Commission's decision, because the monies in the bond would not go to compensating the State, but to compensating other telecommunications carriers. Id. at 503. Furthermore, the court determined that the plaintiff was not really seeking a stay, but an interlocutory injunction, because an order that "prevents a statute, regulation, or administrative decision from taking effect is an injunction . . . ." Id.

Here, granting the Railroads' Motion will not prevent the Pike County order from taking effect. Indeed, by paying the disputed assessments into the Court's registry, the Railroads will be in compliance and will have fulfilled their respective obligations to the Defendants until this matter is resolved. Unlike the plaintiff in Illinois Bell, the Railroads have not yet been afforded a full trial on the merits of their claim. Also unlike Illinois Bell, and as discussed above, the Plaintiffs here will not be entitled to

14

recover the money paid if the assessments are found to violate § 11501(b)(4).

The Defendants' final argument is that the disputed assessments are "trivial in light of the Railroads' overall revenues," and that non-payment would greatly harm Sny Island because the disputed assessments represent 10% of its 2009 maintenance budget.  <u>Defendants' Opposition to Plaintiffs' Emergency Motion for Leave to Pay into the Registry of the Court</u> at 8.  But the 4-R Act does not prohibit discriminatory assessments only if they comprise a relatively small percentage of a railroad's revenues.  The Defendants have acknowledged that the Court will not be able to order them to refund the assessments if they are found to be discriminatory, evidenced by their assertion that the Railroads would not lose their claim because they could challenge assessments in "*subsequent years*."  <u>Id.</u> at 9 (emphasis added).  This observation does nothing to mitigate the effects of paying an allegedly discriminatory assessment *this year*.  The Defendants still have 90% of their operating budget to work with.  The Court is hopeful that placing the disputed funds in its registry will encourage the parties to hasten resolution of this matter, while simultaneously preserving a remedy for the Plaintiffs if they are successful.

Therefore, the Court grants Plaintiffs' Emergency Motion for Leave to Pay into the Registry of the Court. These monies should be deposited with the Clerk of Court. The Court sees no need for oral argument on this matter, and therefore the Railroads' request for oral argument is denied.

## CONCLUSION

THEREFORE, the Plaintiffs' Motion to Reconsider (d/e 28) is GRANTED in part. The Court deletes the sentence found on page 17 of the August 18, 2009, Opinion which read: "Indeed, it appears that § 11501(c) applies only to discriminatory property taxes, and therefore it does not assist Plaintiffs here."

The Plaintiffs' Emergency Motion for Leave to Pay into the Registry of the Court (d/e 34) is GRANTED. Plaintiff Kansas City Southern is directed to deposit with the Clerk of Court for the Central District of Illinois the sum of $85,544.26. Plaintiff Norfolk Southern is directed to deposit with the Clerk of Court for the Central District of Illinois the sum of $93,917.34. The Plaintiffs are directed to contact the Clerk's office for instructions on making the deposits. The Court orders these sums paid on or before October 9, 2009.

The Plaintiffs' Motion for Protective Order (d/e 30) and Defendants'

16

Opposition to Plaintiffs' Motion for Protective Order and Motion to Compel (d/e 33) are referred to Magistrate Judge Charles H. Evans.

The Plaintiffs' Motion for Leave to File Reply (d/e 38) is DENIED as moot.

IT IS THEREFORE SO ORDERED.

ENTER: September 29, 2009

FOR THE COURT:

                                              s/ Jeanne E. Scott
                                              JEANNE E. SCOTT
                                    UNITED STATES DISTRICT JUDGE